**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT ROOSE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 06-0388** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**November 29, 2006**

**I.      Introduction**

Robert Roose brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking

review of the final determination of the Commissioner of Social Security ("Commissioner")

denying his application pursuant to the Social Security Act ("Act") for Supplemental Security

Income ("SSI") Disability Insurance Benefits ("DIB").  Consistent with the customary practice in

the Western District of Pennsylvania, both parties have submitted cross motions for summary

judgment and the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ") decision, the

memoranda of the parties, and the entire record, the Court finds the ALJ's decision that plaintiff

was not disabled because he could perform a significant number of jobs in the national economy

that would accommodate his mental limitations is not supported by substantial evidence.  The

Court therefore will grant plaintiff's motion for summary judgment, deny the Commissioner's

motion for summary judgment, enter judgment in favor of the plaintiff, and remand for further

proceedings.

## II.     Procedural History

Plaintiff, born on April 27, 1966, filed his application for SSI and DIB on December 6, 2002, alleging disability from work as of November 20, 2002, due to manic depression, bipolar disorder, inability to deal with people, stress and anger problems.  R. 51-53, 64.  Following an administrative denial of benefits, plaintiff appealed and a hearing was conducted before ALJ Alma S. de León on July 8, 2004, at which, pro se plaintiff testified, as did a vocational expert ("VE").  On August 27, 2004, the ALJ denied the plaintiff's claim, finding that "[b]ased on the testimony of the vocational expert . . . claimant's age, educational background, work experience, and residual functional capacity, he is capable of making a successful adjustment to work that exists in significant numbers in the national economy."  R. 21.  This decision was largely predicated on the ALJ's finding that Mr. Roose operates at a higher level than his IQ scores and his own complaints may indicate.  R. 18.

On January 19, 2006, the Appeals Council affirmed the ALJ's decision, which thus became the final decision of the Commissioner.  Plaintiff then filed his complaint herein seeking judicial review of the Commissioner's final decision.

## III.     Statement of the Case

Plaintiff has suffered from mood disorders and borderline intellectual functioning for nearly all his life.  When he was in sixth grade, he underwent psychological evaluation for the Pittsburgh Public Schools on January 24, 1979.  R. 17.  At this examination, plaintiff was given the Wechsler Intelligence Scale for Children-Revised ("WISC-R") and scored a verbal IQ of 67, a performance IQ of 84, and a full-scale IQ of 73.  R. 17.  The report accompanying this test

explained that his verbal IQ score fell within the retarded range, and that his performance and full-scale IQ scores fell within the low average range of functioning. R. 17. Subsequently, after taking a combined grade nine and ten program and special education classes at Brashear High School, plaintiff dropped out of high school in 1982. R. 116.

Plaintiff was raised by his sister for a short while, and was eventually placed into foster care programs. R. 155. He began using alcohol at the age of 14, and has had three DUI's between 1982 and 1999. R. 116. He has also had a history of using marijuana until 2004, and been married without children for the past four years. R. 155. Prior to bringing this action, Mr. Roose last worked as a cook and pantry worker at Max & Erma's Restaurant for eight months ending in October of 2002. R. 116. He has held various dishwashing, kitchen help, and housekeeping positions over the past fifteen years. R. 65, 109.

Plaintiff underwent psychological evaluation on January 7, 2003 in connection with his present claim for benefits. R. 114-25. Dr. Willard Reitz, Ph.D. administered this evaluation, and noted that plaintiff was pursuing his disability application partly because he was unable to read or write. R. 17. Indeed, Dr. Reitz even had to read the symptom checklist to Mr. Roose, since he was unable to perform this task on his own. R. 17. At this evaluation, plaintiff was given the Wechsler Adult Intelligence Scale-III ("WAIS-III") test, on which he scored a verbal IQ of 71, performance IQ of 84, and a full-scale IQ of 76. R. 17. Mr. Roose's verbal IQ score fell within the mentally retarded range. R. 114. Furthermore, Dr. Reitz opined that the plaintiff "had the tendency to work rapidly demonstrating avoidance behavior and a lack of impulse control all of which may interfere with his ability to function." R. 114. Mr. Roose was also diagnosed with major depression, anxiety disorder, and a partner relationship problem. R. 122. Based upon

3

these findings, Dr. Reitz stated that "his prognosis is considered poor possibly towards fair which would likely rise if he were [sic] in a psychiatric program." R. 122.

The ALJ made the following specific findings:

1.  The claimant meets the non[-]disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  The claimant's mood disorders and borderline intellectual functioning are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The claimant can perform work at any exertional level. He cannot deal with the public and can have minimal interaction with peers and supervisors. The claimant cannot follow detailed instructions, make complex decisions, cope with stress in emergency situations or adapt to frequent changes in a work setting.

7.  The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8.  The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

9.  The claimant has "a limited education" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. Considering the types of work that the claimant is still functionally capable of performing in combination with the claimant's age, education and work

experience, he could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy. Examples of such jobs include work as janitor. There are over 100,000 such jobs at the heavy exertional level in the national economy, and there are over 500,000 such jobs at the medium exertional level in the national economy as well as 90,000 such jobs at the light exertional level in the national economy. The claimant can perform the job of food service worker, with over 100,000 jobs at the light exertional level and over 150,000 jobs at the medium exertional level in the national economy. Finally, he could perform the job of packager, with over 150,000 sedentary jobs, over 250,000 light jobs, over 100,000 medium jobs and over 60,000 heavy jobs in the national economy.

12.　The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

13.　The claimant has no exertional limitations (20 CFR §§ 404.1545 and 416.945).

R. 21-22.

In his appeal from these findings and determination, plaintiff claims (1) that the ALJ did not sufficiently inform him of his right to counsel, (2) that the Appeals' Council erred in its refusal to consider his 2004 medical records, which were submitted after the ALJ's decision, and (3) that the ALJ failed to properly consider his mental impairments when making her residual functional capacity ("RFC") determination.

## III.　Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2]. Section 405(g) permits a district court to review

---

[1] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

_____

42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

*Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutheford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he

grounds upon which an administrative order must be judged are those upon which the record

discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is

some "medically determinable basis for an impairment that prevents him or her from engaging in

any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d

775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the

claimant must show "he is unable to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is

entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential

evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The

Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*,

186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently
> engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found
> to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*,
> the Commissioner must determine whether the claimant is suffering from a severe
> impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments
> are "severe", she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's
> impairment to a list of impairments presumed severe enough to preclude any gainful
> work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or
> its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to

consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala*

*v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[3]  *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." Rutherford, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand.  *Boone*, 353 F.3d at 206.

---

[3]  Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in

12

combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli ,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

Claimant's Subjective Complaints of Impairments and Pain

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.

1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony

as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ

may discount claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765

F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers

v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient

evidence to support his or her claim of disability, the Appeals Council may not base its decision

upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to

refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's

testimony is reasonably supported by medical evidence, the finder of fact may not discount the

testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d

Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence,

both medical and non-medical, that support a claimant's subjective testimony about symptoms

and the ability to work and perform activities, and must specifically explain his or her reasons for

rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112,

119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical

records and documents for that of a treating physician; "an ALJ is not free to set his own

expertise against that of a physician who presents competent evidence" by independently

"reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37

(3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord

treating physicians' reports great weight, especially 'when their opinions reflect expert judgment

based on a continuing observation of the patient's condition over a prolonged period of time.'

*Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ."

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must

weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence

for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional

citations omitted). The ALJ must consider all medical findings that support a treating physician's

assessment that a claimant is disabled, and can only reject a treating physician's opinion on the

basis of contradictory, medical evidence, not on the ALJ's own credibility judgments,

speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

> Moreover, the Commissioner/ ALJ

>> must "explicitly" weigh all relevant, probative and available evidence. . . . [and]
>> must provide some explanation for a rejection of probative evidence which
>> would suggest a contrary disposition. . . . The [Commissioner] may properly
>> accept some parts of the medical evidence and reject other parts, but she must
>> *consider* all the evidence and *give some reason for discounting* the evidence she
>> rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43

(although ALJ may weigh conflicting medical and other evidence, he must give some indication

of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed

to mention significant contradictory evidence or findings, Court was left to wonder whether he

considered and rejected them, or failed to consider them at all, giving Court "little choice but to

remand for a comprehensive analysis of the evidence consistent with the requirements of the

applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a

residual functional capacity determination, the ALJ must consider all evidence before him. . . .

Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[4] Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

---

[4]     Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings require that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment

---

[5]     SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

**V. Discussion**

Plaintiff argues that the ALJ's efforts to inform him of his right to counsel were insufficient in light of his mental disabilities and inability to read. Second, plaintiff suggests that the Appeals' Council erred in failing to consider his medical records from 2004, which were submitted shortly after the ALJ's decision. Lastly, plaintiff argues that the ALJ's RFC assessment

was not supported by substantial evidence of record.

1.  The ALJ Failed to Adequately Inform Plaintiff of His Right to Representation.

Mr. Roose was sent a letter on April 25, 2003 informing of his right to counsel (R. 36), and on April 16, 2004 he signed off on a letter stating that he understood that he would be granted no further postponements in order to obtain representation. R. 47. However, it has been established that Mr. Roose's communication skills are assessed near the mentally retarded level, and there is some evidence in the record that he is actually illiterate. Knowing of such communicational barriers, the ALJ did not sufficiently inform the plaintiff of his right to counsel.

Other than the letter sent on April 25, 2003, and the signed waiver from April 16, 2004, the only other explanation of this right was at Mr. Roose's first hearing on April 16, 2004:

CLMT: I mean, who's going to represent me, though? I mean, where would I go?

ALJ: Well, I told you about the legal services. Also, you can go to the, I think, Allegheny County Bar Association in the Koppers Building and check if they do pro bono.

CLMT: They're at the Koppers Building?

ALJ: Uh-huh.

CLMT: Where's that at? Down here?

ALJ: On the corner, uh-huh. They, I think, have offices in the third floor or four. You can ask the security guard.

CLMT: Could I go right now and see? I mean - -

ALJ: Well, they won't see you today, you know. You will have to - -

CLMT: Well, I mean, just, like, set it up and whatever.

ALJ: Uh-huh. You will have to check if they do pro bono, they can refer to an attorney

that will take your case. That's the only thing. Are you going to do that?

CLMT: Yeah, I'll try. I mean, I'll - -

ALJ: So you want to have a - - but this is the last time I will give you this opportunity. Because I cannot, every time you come you said, well, I couldn't get anyone. Now, because you're depriving another claimant to be here today. So you have to be very conscientious about going and have a rep. Do you understand?

CLMT: Yeah, but don't you need doctors and stuff like that?

ALJ: Also, you need to have doctors, that's correct, too. You have to have treatment. Uh-huh. So you let me know because the last thing we have here dates back from January 7, 2003. There's no treatment for any doctor. So we don't have even - -

CLMT: No benefit, then I have no medical.

ALJ: - - you, you're not taking, okay, medications or anything? Well, you let me know if you want to proceed with your case, also.

CLMT: Well, I'll try to get somebody. That's all I can, you know.

ALJ: And, also, let me know if you're going to have treatment or not because I need to know what's your status with this case.

CLMT: All right.

ALJ: Okay. So you will have another opportunity. But, really, I cannot have this back and forth.

CLMT: Okay.

ALJ: Okay? You have the form, acknowledgment?

CLMT: And this is what? This is for, what, lawyers here?

ALJ: Yeah, see what you have close to your area.

R. 173-75. As this exchange indicates, and his IQ scores further underscore, Mr. Roose was not adequately informed of his right to counsel by the ALJ.

In support of this argument, plaintiff cites *Earp v. Commissioner of Social Security Admin.*, 168 F.Supp.2d 628 (E.D. Tex. 2001).  In *Earp*, as in the case at hand, two separate notices were sent to the claimant recommending that he seek legal assistance.  *Id*. at 634.  The Court found the ALJ's efforts there to be inadequate, as the claimant could not read or write.  *Id*. This rationale is persuasive and applicable to the case at hand.  Because of this, Mr. Roose's case will be remanded for further proceedings so that he may receive the benefit of representation.

Furthermore, when a claimant proceeds before an administrative hearing without assistance of counsel, the presiding ALJ has an obligation to "scrupulously and conscientiously probe into, inquire of, and explore all relevant facts."  *Reefer v. Barnhart*, 326 F.3d 376 (3d Cir. 2003).  Here, the ALJ did not even attempt to help Mr. Roose obtain his relevant medical records.  Without this help, he was unable to procure his most recent treatment during 2004 at his administrative hearing on July 8, 2004.  The Court finds that sending boilerplate letters to an illiterate claimant and the verbal exchange noted above regarding plaintiff's need for a lawyer was not sufficient.

2.   The Appeals' Council Erred in Failing to Consider Plaintiff's Newly-Submitted Medical Records.

When new evidence is submitted to the Appeals' Council, it is required to evaluate the "entire record including the new and material evidence submitted" when deciding whether to review a case.  *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).  Indeed, this "is consistent with the policy of giving the claimant ample opportunity to prove his or her disability."  *Id*. at 594. Mr. Roose's medical records dating from May 19 to June 28, 2004 were a very recent evaluation

of his mental health. These records diagnose Mr. Roose with "major depressive disorder with psychotic features." R. 156. This evidence refutes the diagnostic assessment of Dr. Reitz from January 7, 2003, which stated that the claimant had recurrent depression *without psychosis*. R. 17.

Furthermore, the new medical records confirmed his past psychological examinations insomuch as they diagnosed the plaintiff with major depressive disorder, anxiety disorder, a learning disability, and borderline intellectual functioning. R. 156. In addition to confirming past reports' applicability to plaintiff's current mental health status, if considered by the Appeals' Council these records would have further confirmed Mr. Roose's claim at his hearing that he was being treated for his mental health problems.

As these new medical records offer an evaluation which contradicts the evaluation relied upon by the ALJ in making her RFC assessment, corroborate prior evaluations, and add credibility to plaintiff's testimony, they were "material" and should have been considered by the Appeals' Council. Accordingly, these records are to be considered when determining the plaintiff's RFC upon remand.[6]

## VI. Conclusion

The Court has reviewed the ALJ's decision and determines that plaintiff was not adequately informed of his right to counsel, and that the ALJ failed to "scrupulously and conscientiously probe into, inquire of, and explore all relevant facts" as required by *Reefer*, 326

---

[6] The Court will not consider plaintiff's third argument at this time because the Court has remanded this case for further proceedings.

F.3d 376.  Furthermore, the Appeals' Council erred in failing to consider plaintiff's newest

medical records, which should be considered as part of the record upon remand.

An appropriate order will follow.




s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:  All counsel of record as listed below

Karl E. Osterhout, Esq.
570 Edgewood Towne Center Offices
1789 South Braddock Avenue
Pittsburgh, PA 15218

Jessica Smolar
Assistant United States Attorney
Western District of Pennsylvania
700 Grant Street, Suite 4000
Pittsburgh, PA 15219